NOT DESIGNATED FOR PUBLICATION

No. 114,390

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

TYRONE MURPHY,
*Appellant*.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; J. DEXTER BURDETTE, judge. Opinion filed October 28, 2016. Appeal dismissed.

*Rick Kittel*, of Kansas Appellate Defender Office, for appellant.

*Kristiane N. Bryant*, assistant district attorney, *Jerome A. Gorman*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before MALONE, C.J., SCHROEDER, J., and WALKER, S.J.

*Per Curiam*: Tyrone Murphy appeals his sentence following his convictions of one count of second-degree murder and two counts of aggravated battery. The only issue Murphy raises is that the district court erred by denying his motion for a downward departure sentence. Specifically, Murphy argues that the district court did not adequately consider and rule upon the mitigating factors supporting the departure motion and did not issue findings of fact and conclusions of law as required by statute. We dismiss Murphy's appeal for lack of jurisdiction.

1

On April 9, 2014, the vehicle Murphy was driving was stopped by a police officer. Murphy fled in his vehicle when the officer asked him to step out of the vehicle because he smelled marijuana coming from the car. Murphy ran a red light a short distance from the location of the stop and struck a minivan that was driven by Jacqueline Ramirez and occupied by her three children. Ramirez' daughter, Jasmine Rodriguez, died as a result of the collision. Another child, Jesus de Guadalupe Rodriguez, suffered severe injuries, including massive head trauma. Ramirez suffered a broken back and other spinal injuries.

An investigation revealed that at the time of the collision Murphy had marijuana, cocaine, and alcohol in his system. The police discovered cocaine in the car, and other evidence indicated that Murphy had consumed marijuana shortly before the collision.

The State initially charged Murphy with one count of first-degree murder, three counts of aggravated battery, one count of eluding a police officer, one count of possession of cocaine, and one count of possession of drug paraphernalia. Murphy ultimately pled no contest to one count of intentional second-degree murder and two counts of aggravated battery. The plea agreement left sentencing open to argument.

Prior to sentencing, Murphy filed a motion for a durational and/or a dispositional departure. The motion included the following grounds for departure: (1) Murphy's actions were not typical of intentional second-degree murder and aggravated battery because he did not intend to hurt anyone; (2) he had accepted responsibility through his plea and saved the victims the trauma of a trial; (3) he had no criminal history and posed little threat to public safety; (4) his "impaired mental and emotional state diminished his capacity for judgment at the time of the offense and contributed to his decision to flee in a panic, trying to reach his home rather than encounter the officer alone on the street at night"; (5) he was extremely remorseful and a long prison sentence would not prevent or

2

deter future criminal conduct; (6) more lenient sentences had been imposed in similar cases in the Kansas City area; and (7) Murphy fled from the officer because he feared for his life and his flight was "consistent with a well-known flight reaction" of individuals who are frightened. Murphy also argued that his sentences should run concurrently.

The district court held a sentencing hearing on May 29, 2015. At the hearing, Murphy renewed his arguments for a downward durational or dispositional departure. The State argued that there was not a substantial and compelling reason to impose a departure sentence. Instead, the State requested that the district court impose the aggravated sentence for each count and run the sentences consecutively. After hearing the arguments, the district court addressed Murphy's departure motion as follows:

"I've been on the bench a number of years and these are the type of cases that I dread the most. I've read everything submitted to me by both sides and I certainly listened during the plea and then the beginning of this case, all the motions and arguments, et cetera, and here we are. It always—I say always—frequently the defendant at this juncture I get to hear from the support system that he had, the years that he did all sorts of good things and what a asset to his church, his family, his community he has been and yet here we are and especially under these circumstances.

"The defendant is not a black hearted villain by any stretch of the imagination, but he's certainly no saint either. I understand in moments like these why the family of the accused and certainly the family of the victims need and want forum to express their emotions, their hopes, their biases, their prejudices, and what they think should be justice and what is fair and impartial.

"Fleeing and eluding, I mean, basically that's what we're talking about here, it never ceases to amaze me in these types of cases the deflection from the defendant's actions to the police or the authorities, you know, why did you have this policy in effect? Why did you chase him for x amount of time, x amount of miles? What you should have done was stand back, let him go, diffuse the situation. You know, I understand people who argue that, but the bottom line is, and this is what this sentencing is all about, is responsibility and the actions of the defendant. And that's, frankly, what we are here and

3

about here today, the actions of Tyrone Murphy on the date in question. Choice—choices.

"You know, the defendant was under the influence of I believe cocaine, marijuana, and possibly alcohol at the time of this stop. Now, how many other times had he been behind the wheel of a car in our community under the same influence and he just wasn't caught or he didn't hurt anybody or he didn't run a stop sign, he wasn't stopped by the authorities? But the person driving that car is not the person described by family and friends. But even so, we've got an individual who has made choices.

"I mean, let's understand, you made the choice of cocaine, marijuana, alcohol. You made the choice of taking a photograph of himself under the influence, abusing drugs before he got behind the wheel of that car. Now, it's always been my understanding and I'm—I'm old school and I'll tell you that, driving is a privilege and when you take the wheel of a car on our streets, it's not just you, it's the community that you have to worry about. He chose to get behind the wheel of the vehicle under the influence of alcohol. He chose to drive that vehicle on our streets and then when he was stopped by the police officer, he chose to flee.

"You know, the forensic opinion posited by the defense is certainly less than substantive and compelling in this Court's opinion. When confronted under the same situation, then what was on his mind at the time he choose to flee, he was in fear of the police officers and he chose the—while—because [*sic*] he was fearful, he chose to flee and that's a normal reaction. Well, I mean, how—every time you see a police officer in your rearview mirror, am, I speeding? Well, what have I done? Are they after me? I mean, sure, that's a normal reaction.

"If he made the choice to get out of the car, take his medicine at the time, we wouldn't be here. That's obvious to everybody. If he had chosen not to partake of the drugs and the alcohol, we would not be here. If he hadn't made the choice to flee we would not be here. He made the worst decision of his life—hopefully it'll be the worst decision of his life to flee at a high rate of speed on our streets and in our community. The fleeing and eluding from the authorities is probably the most inherently dangerous action we've got currently today and I fail to find the emphasis focused on the defendant's actions. Well, that's what I'm doing here today. I'm focusing on the defendant's actions.

"You posit four to five reasons of mitigation, why I should take pity, show mercy on the defendant. I can tell you the threshold is substantial and compelling and the aggravating factors in this case overshadow immensely the mitigating factors that are

4

argued on behalf of the defendant. But I do—and I do understand your argument. The acceptance of responsibility, you know, I've heard him say sorry, I—so many times here today, I don't know that I ever heard him say that before today. He did get a break initially from felony murder down to second degree intentional.

"This is the problem that I have and I—there's no formula that I can use and there's no trick. There's no solution. I mean, there are people who are permanently disabled by the actions of the defendant. They will never—he can't—can he give that back to them? No. But—and the most important and the most frustrating thing is can he give them their daughter? No, he cannot. What would she have become? What was her potential? Would she have been someone famous? Would she have found a cure for cancer? I don't know. Would she have just gotten a job, got married, had a family of her own and been a good parent? That to me is the true hero. I—I am affected somewhat, but the law is clear in these cases and the law in this case says that the defendant should pay for the consequences of his actions.

"Your motion for a dispositional and/or departure—durational or dispositional departure is denied for the reasons I've already articulated."

The district court imposed the aggravated sentences of 165 months' imprisonment for second-degree murder and consecutive sentences of 43 months' imprisonment for each of the two aggravated battery convictions for a controlling sentence of 251 months' imprisonment. Murphy timely appealed his sentence.

On appeal, Murphy claims the district court misinterpreted the sentencing statute and failed to adequately consider and rule upon the mitigating factors he offered in support of a departure sentence. Murphy also contends that the district court failed to make legally required findings of fact and conclusions of law regarding whether he should receive a downward departure sentence.

The State responds that this court lacks jurisdiction to hear Murphy's appeal because he received the presumptive sentence under the sentencing guidelines. The State also argues that the district court discussed Murphy's arguments for a departure sentence

5

at the sentencing hearing. Finally, the State argues that the district court is not required to make findings of fact and conclusions of law on the record when it denies a departure motion and imposes the presumptive sentence.

We will first address our jurisdiction to hear Murphy's appeal. Whether jurisdiction exists is a question of law over which an appellate court's scope of review is unlimited. *State v. Looney*, 299 Kan. 903, 906, 327 P.3d 425 (2014).

K.S.A. 2015 Supp. 21-6820(c)(1) provides that an appellate court lacks jurisdiction to review a sentence for a felony conviction when that sentence is within the presumptive guidelines sentence for the offense. See *State v. Sprung*, 294 Kan. 300, 317, 277 P.3d 1100 (2012) (applying K.S.A. 2015 Supp. 21-6820[c]'s predecessor statute K.S.A. 21-4721[c][1]). This lack of appellate jurisdiction also applies when a motion to depart is denied and the presumptive sentence is imposed. See *State v. Grebe*, 46 Kan. App. 2d 741, 745, 264 P.3d 511 (2011), *rev. denied* 294 Kan. 945 (2012). Finally, the imposition of consecutive presumptive sentences does not constitute a departure sentence and is not appealable. See *State v. Jacobs*, 293 Kan. 465, 466, 263 P.3d 790 (2011).

There is an exception to the rule that an appellate court lacks jurisdiction to review a presumptive sentence when the record indicates that the district court did not understand its sentencing authority. See *State v. Warren*, 297 Kan. 881, 885, 304 P.3d 1288 (2013) (defendant allowed to appeal presumptive sentence because district court misunderstood its authority to impose departure sentence based on the amount of marijuana); *State v. Cisneros*, 42 Kan. App. 2d 376, 379, 212 P.3d 246 (2009) (defendant allowed to appeal presumptive sentence because district court misunderstood its authority to modify sentence at probation revocation). Murphy argues that the district court's statement that "I—I am affected somewhat, but the law is clear in these cases and the law in this case says that the defendant should pay for the consequences of his actions" shows that the district court misinterpreted the applicable statute governing departure sentences.

6

The exception to the jurisdictional rule found in *Warren* and *Cisneros* is not applicable to Murphy's case. At the sentencing hearing, the judge addressed the departure motion and specifically: (1) stated that there were four or five reasons that Murphy argued justified a departure; (2) stated that the applicable standard was substantial and compelling; (3) discussed the factors, including the facts of the crime, the harm caused to the victim, and Murphy's acceptance of responsibility; (4) stated that the aggravating factors in the case immensely overshadowed the mitigating factors; and (5) denied the motion "for the reasons I've already articulated." These statements clearly show that the district court understood it had the authority to grant Murphy's motion and impose a departure sentence.

Murphy also argues that the district court did not issue findings of fact and conclusions of law in denying his departure motion as required by K.S.A. 2015 Supp. 21-6817(a)(2). Statutory interpretation is a question of law over which appellate courts have unlimited review. *State v. Eddy*, 299 Kan. 29, 32, 321 P.3d 12 (2014).

Murphy is correct that K.S.A. 2015 Supp. 21-6817(a)(2) requires the district court to issue findings of fact and conclusions of law and to enter an appropriate order at the conclusion of a hearing on a departure motion or within 21 days of the hearing. However, our Supreme Court has held that this statute does not require the district court to make findings of fact and conclusions of law when it denies a departure motion and imposes the presumptive sentence. *State v. Koehn*, 266 Kan. 10, 15-16, 966 P.2d 63 (1998) (applying K.S.A. 2015 Supp. 21-6817[a][2]'s predecessor statute K.S.A. 21-4718[a][2]).

In sum, Murphy's attempt to appeal his presumptive sentence is prohibited by K.S.A. 2015 Supp. 21-6820(c)(1). The district court clearly understood its authority to grant Murphy's motion for a departure sentence had it wanted to do so. The district court was not required to issue findings of fact and conclusions of law when it denied the departure motion and imposed a presumptive sentence. As a result, this court lacks

jurisdiction to consider Murphy's appeal from the denial of his motion for a departure sentence. See *Grebe*, 46 Kan. App. 2d at 745.

Appeal dismissed.